A98A0702, A98A0703. URBAN v. LEMLEY; and vice versa.

(501 SE2d 529)

BLACKBURN, Judge.

Jessie G. Beck died in December 1993, leaving a will naming Isamae Bullard Urban and Julian M. Head as co-executors of her estate. At the time of her death, Beck and Head were listed as joint holders of a checking account at Wachovia Bank and a money market account at Trust Company Bank. They also jointly owned a tax-free municipal bond issued by the Macon-Bibb County Hospital Authority. Head died in February 1994, naming Ann E. Lemley as executrix of his estate.

Urban, as executrix of Beck's estate, sued Lemley, as executrix of Head's estate, contending that the bond and the funds in the two accounts were the property of Beck's estate. Lemley claimed that the funds and the bond were solely the property of Head's estate. The trial court denied both parties' motions for partial summary judgment with respect to the joint accounts and granted Lemley's motion for partial summary judgment with respect to the municipal bond. In these cross-appeals, the parties appeal these rulings.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant [or denial] of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

1. *The joint bank accounts.* At the time of Beck's death, she and Head were listed as joint holders of a checking account at Wachovia Bank and a money market account at Trust Company Bank. Urban and Lemley each moved for partial summary judgment, contending that the funds in such accounts belonged solely to their respective estates. The trial court denied both motions, and the parties appeal.

Both parties rely on OCGA § 7-1-813 (a), which provides that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent, unless there is clear and convincing evidence of a different intention at the time the account is created." Lemley contends that there is no evidence of such contrary intention and that the funds belong to Head's estate as a matter of law. Urban, on the other hand, contends that there was evidence that Beck did not intend the funds in the accounts to go to Head at her death, and that she was entitled to summary judgment on this issue.

Urban relies on several pieces of evidence to support her contention that Beck did not intend for the funds to go to Head at her death. Urban testified that, in 1989, when Beck was in ill health, Beck told

her she had a joint account that Head could use to buy groceries for her and pay her bills when she could not take care of herself. However, this testimony regarding Beck's alleged statement constitutes hearsay. As such testimony is in the interest of Beck's estate, it does not come within the hearsay exception for statements against interest, and the fact that Beck is now deceased does not change this result. See *Chrysler Motors Corp. v. Davis*, 226 Ga. 221, 224-225 (173 SE2d 691) (1970); OCGA § 24-3-8. As hearsay lacks probative value in a summary judgment proceeding, this testimony does not support Urban's position. *Jenkins v. Hall*, 226 Ga. App. 437, 438 (1) (487 SE2d 66) (1997).

Moreover, even if admissible, Beck's alleged statement would not constitute evidence of her intent at the time the accounts were opened. The statement was made in 1989, years before the accounts at issue in this case were established. The Wachovia account was not opened until April 1992, and the Trust Company account was made a joint account in February 1993. Urban had no discussions with Beck or Head about these accounts. Beck's alleged statement to Urban years earlier, relating to a separate account, does not create a jury question as to her intent in opening the accounts at issue in this case. Furthermore, with respect to the Trust Company account, the record contains a copy of a signature card signed by Beck acknowledging the survivorship features of the joint account. Thus, the only direct evidence relating to Beck's intent at the time she opened the accounts shows that she intended the survivorship provisions to apply to the Trust Company account.

Urban also relies on an affidavit submitted by Robert Schivera, an attorney who represented Beck's estate. Schivera stated that, about a week after Beck's death, he had a meeting with Urban and Head, who were named joint executors of Beck's estate, to discuss the probate of Beck's will. Schivera said that, at this meeting, the parties discussed Head's possible claim to the funds in the accounts. According to Schivera, Head "stated that he did not consider the funds in those accounts to be his, but rather that they belonged to the estate of Jessie Beck."

Even if Schivera's account of this discussion is believed, it relates only to Head's understanding, after Beck's death, of his claim to the funds in the accounts. However, Head's understanding is not the critical issue. Under OCGA § 7-1-813 (a), the relevant issue is Beck's intent at the time the accounts were created. Although Head's alleged statement may show that he did not consider the money his, it does not establish that Beck did not intend for the survivorship provisions to apply when she opened the accounts. Nothing in Schivera's affidavit shows the reason for Head's belief that the funds were not his, or that Head was even aware of Beck's intent at the

time the accounts were created. Accordingly, Schivera's affidavit does not create a jury question as to Beck's intent at the time she opened the accounts.

Urban also testified that, in 1988 or 1989, Head began collecting certain rents on Beck's behalf, and that Beck on one occasion indicated that Head was not sufficiently vigilant in collecting payment. However, this testimony does not in any way relate to Beck's intent in setting up the joint accounts at issue in this case.

As Urban has not presented any admissible evidence raising a factual issue regarding Beck's intent, she has not overcome the statutory presumption that the funds in the accounts belonged to Head at Beck's death. Accordingly, the trial court erred in denying Lemley's motion for summary judgment with respect to the funds in the accounts at the time of Beck's death. The trial court correctly denied Urban's motion for summary judgment on the same issue.

2. *The house funds.* After Beck's death, Head deposited $22,760.78 into the Wachovia account, representing proceeds from the sale, pursuant to his power of attorney, of certain real property owned by Beck (the house money). Urban contends that the house money is property of Beck's estate and that the trial court erred in failing to grant summary judgment to her with respect to such funds.

In her motion for summary judgment, Urban did not advance a separate rationale for her entitlement to the house money, merely contending that she was entitled to all of the funds in the two accounts (including the house money) due to the application of OCGA § 7-1-813 (a). However, as recognized by the trial court in its order, OCGA § 7-1-813 (a) is not applicable to the house money because such funds were not on deposit in the joint account at the time of Beck's death. The trial court expressly stated in its order that "it [does not] address whether the Head estate is otherwise accountable to the Beck estate for these funds." As this issue has not been presented to or ruled upon by the trial court, we cannot consider whether there is any other basis for Urban's claim to the house money. See *Barmore v. Himebaugh*, 205 Ga. App. 381, 383 (3) (422 SE2d 255) (1992).

3. *The municipal bond.* Beck and Head also jointly owned a municipal bond issued by the Macon-Bibb County Hospital Authority. The bond was titled jointly in Beck's and Head's name with rights of survivorship. At the time of Beck's death, the bond had not yet matured, and the bond certificate was held by SunTrust Securities, Inc. The bond was ultimately redeemed after the death of both Head and Beck, and the proceeds placed into the Trust Company Bank account. The trial court granted partial summary judgment to Lemley, holding that the bond belonged to Head's estate, and Urban appeals this ruling.

In an attempt to defeat the survivorship provision of the bond, Urban relies on OCGA § 7-1-813 (a), contending that there was evidence that Beck did not intend for Head to have survivorship rights with respect to the bond. However, OCGA § 7-1-813 (a) applies only to "[s]ums remaining on deposit at the death of a party to a joint account." OCGA § 7-1-810 (4) defines "joint account" as "an account payable on request to one or more of two or more parties, whether or not mention is made of any right of survivorship." OCGA § 7-1-810 (1) provides that " '[a]ccount' means a contract of deposit of funds between a depositor and a financial institution and includes a checking account, savings account, certificate of deposit, share account, and other like arrangements."

Thus, in order to constitute a "joint account" for purposes of OCGA § 7-1-813, an arrangement must constitute "a contract of deposit of funds between a depositor and a financial institution." A municipal bond, however, is not a contract of deposit with a financial institution, but an evidence of indebtedness issued by a city or other corporate public body. See Black's Law Dictionary (rev. 4th ed.), p. 1168. Therefore, OCGA § 7-1-813 is not applicable to the municipal bond at issue in this case.

Apart from OCGA § 7-1-813, Urban does not advance any other arguments for defeating the survivorship provisions of the bond. Accordingly, the trial court did not err in granting partial summary judgment to Lemley with respect to ownership of the bond.

*Judgments affirmed in part and reversed in part. McMurray, P. J., and Eldridge, J., concur.*

DECIDED APRIL 3, 1998 —
RECONSIDERATION DENIED APRIL 15, 1998 — 

*Brennan & Wasden, Joseph P. Brennan, James V. Painter*, for appellant.

*Weiner, Shearouse, Weitz, Greenberg & Shawe, Aron G. Weiner, Edwin R. Byck*, for appellee.