A01A2462. HUGHLEY v. FRAZIER et al.
A01A2463. FRAZIER v. HUGHLEY.
(562 SE2d 821)

SMITH, Presiding Judge.

Austin Hughley brought this medical malpractice action against Dr. Mary Frazier and Dr. Raymond Rubin alleging that as a result of their misdiagnosis of his medical condition, surgery was required which rendered him permanently incontinent. Both defendants moved for summary judgment on the ground that the two-year statute of limitation had run on Hughley's claims. The trial court granted Dr. Rubin's motion but denied that of Dr. Frazier, concluding that under the "continuous treatment" doctrine discussed in *Williams v. Young*, 247 Ga. App. 337 (543 SE2d 737) (2000), questions of fact existed as to whether Frazier's treatment of Hughley was terminated within the applicable statute of limitation. In Case No. A01A2462, Hughley appeals from the grant of Dr. Rubin's motion for summary judgment, and in Case No. A01A2463, Frazier appeals from the denial of her motion. Because Hughley failed to bring his action against Dr. Rubin within two years from the date of his injury as required by OCGA § 9-3-71 (a), we affirm the trial court's grant of summary judgment to him. As for Dr. Frazier's motion, however, although the "continuous treatment" doctrine was struck down in *Young v. Williams*, 274 Ga. 845 (560 SE2d 690) (2002), we conclude that she failed to pierce the pleadings with respect to Hughley's claim that she committed fraud that tolled the statute of limitation. We therefore affirm the denial of summary judgment to Dr. Frazier.

Sometime in March or April 1996, Hughley sought treatment from Dr. Frazier for rectal complaints. The parties dispute the dates of treatment concerning those complaints. Frazier testified by affidavit, and Hughley's medical records show, that she first treated this condition on April 29, 1996. Hughley testified, however, that on April

1, 1996, Dr. Frazier examined him and diagnosed him as having "'external hemorrhoids' with large rectal opening" and began treatment for that condition. On April 11, Hughley was referred to Dr. Rubin, a gastroenterologist who performed various tests on that date and again on May 2 and diagnosed Hughley as having internal and external hemorrhoids, without any thrombosis. Dr. Rubin testified that he performed no further examinations after May 2, 1996.

Meanwhile, according to Hughley, Dr. Frazier examined him on April 29 and May 9. At both visits, Dr. Frazier diagnosed his condition as hemorrhoid-related. Dr. Frazier testified that she examined Hughley on May 7 and May 9 and that Hughley cancelled a scheduled appointment for May 16. It appears to be undisputed that on May 16, Hughley was examined by Dr. Earl Pennington, a proctologist. Dr. Pennington allegedly diagnosed Hughley with an "anal fistula and chronic abscess" and immediately referred him to a surgeon, Dr. Oscar Grablowsky. Dr. Grablowsky examined Hughley on May 20 and on May 21 performed a surgical procedure. Hughley testified that Dr. Grablowsky informed him that this condition had been present for many months and that the size of the fistula and abscess required the division "of the internal and external sphincter muscles." Hughley believed that this surgical procedure "directly caused [him] unnecessarily to become permanently incontinent." His complaint in this case alleges that the

> size of the fistula and abscess was proximately and directly caused by the failure of defendants to timely properly diagnose, treat and/or surgically remove it and refer plaintiff to a proctologist for this purpose, when its size and deepness during their course of treatment would not have required such division of the internal and external muscles posteriorly, but could have been successfully treated and/or removed without such division being necessary.

This complaint was originally filed on May 18, 1998, but was later dismissed. The action was refiled as a renewal action on April 17, 2000. The central issue on appeal is whether the original action was filed against Dr. Frazier and Dr. Rubin within the two-year statute of limitation for medical malpractice actions.

1. We first address Hughley's contention that the action was timely filed against Dr. Rubin under the "continuous treatment" doctrine adopted in *Williams*, supra. In *Williams*, we concluded that if misdiagnosis occurred during a continuous course of examination and treatment of a particular condition, the two-year statute of limitation for medical malpractice claims began to run on the date the course of examination or treatment for the condition terminated. Id.

at 341. But *Williams* was recently reversed. In *Young*, supra, the Supreme Court of Georgia found that *Williams* erroneously modified the legislatively prescribed two-year statute of limitation by adoption of the continuous treatment doctrine, stating that "the judicial branch is not empowered to engraft such a provision on to what the legislature had enacted." Id. at 848. Therefore, in general,

> in most misdiagnosis cases, the injury begins immediately upon the misdiagnosis due to the pain, suffering, or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis; thus, the fact that the patient did not know the medical cause of his suffering does not affect the applicability of OCGA § 9-3-71 (a).

(Citations and punctuation omitted.) *Ford v. Dove*, 218 Ga. App. 828, 830 (3) (463 SE2d 351) (1995), overruled in part on other grounds, *Ezor v. Thompson*, 241 Ga. App. 275, 279 (1) (526 SE2d 609) (1999). See also *Crawford v. Spencer*, 217 Ga. App. 446, 448 (457 SE2d 711) (1995);[1] *Frankel v. Clark*, 213 Ga. App. 222, 223 (444 SE2d 147) (1994).

The record is undisputed that Rubin did not treat Hughley after May 2, 1996. "It is true that in ruling upon a motion for summary judgment, the court must construe all reasonable inferences in favor of the non-movant. Here, however, our search of this record discloses no specific fact other than general arguments that may lead to inferences favorable to [the non-movant]." (Citation and punctuation omitted.) *Crown Ford, Inc. v. Crawford*, 221 Ga. App. 881, 885 (3) (473 SE2d 554) (1996). Dr. Rubin's alleged misdiagnosis, which occurred no later than May 2, 1996, occurred outside the two-year statute of limitation for medical malpractice claims, and the trial court correctly granted summary judgment to this defendant.

Hughley cites several cases in support of his argument that summary judgment was improperly granted to Dr. Rubin. But we find the facts and reasoning of those cases to be inapplicable. Relying on *Stephen W. Brown Radiology Assoc. v. Gowers*, 157 Ga. App. 770 (278 SE2d 653) (1981), and *Whitaker v. Zirkle*, 188 Ga. App. 706 (374 SE2d 106) (1988), Hughley contends that the confidential relation-

---

[1] In *Ezor*, supra, we overruled *Ford* only to the extent that it applied the self-contradictory testimony rule to an expert witness. Id. at 279 (1). And this court purported to overrule *Ford* and *Crawford* in *Williams*, supra. Id. at 342. But given the reversal of *Williams* by the Supreme Court, the general rule concerning the statute of limitation in misdiagnosis cases discussed in *Ford* and *Crawford* remains viable.

ship between him and Dr. Rubin prevented him from discovering his injury until May 16, 1996. But *Gowers* was not a misdiagnosis case, and some evidence showed that defendants treated plaintiff within two years of plaintiff's filing of his lawsuit. Here, however, Dr. Rubin's treatment of Hughley ended May 2, 1996, outside the limitation period.

*Whitaker*, supra, can also be distinguished. In *Whitaker*, this court did create a limited exception to the general rule that a misdiagnosis constitutes the injury under OCGA § 9-3-71. We stated that "[w]hen an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered. [Cit.]" Id. at 708 (1). But the facts of that case differ from those here. There, the record showed that defendants misdiagnosed the presence of cancer in a mole removed from plaintiff's back in 1978. Id. at 706. For approximately seven years, plaintiff remained free of cancer symptoms, but in 1985, a biopsy of tissue from the mole revealed the presence of cancer. Id. She filed suit against her doctor and others in May 1986, within a year of her diagnosis of cancer. Id. Noting that plaintiff suffered no symptoms of cancer for several years after the misdiagnosis, this court concluded that questions of fact existed as to whether the subsequent metastasis was a separate injury. Id. at 708 (1). But here, Hughley had been continuously experiencing the effects of his condition when he was diagnosed by Dr. Rubin. In fact, his complaint alleges that the anal fistula existed before his first visit with Dr. Rubin. Therefore, any injury he may have sustained occurred at the time of the misdiagnosis.

Hughley also argues that the permanent incontinence occasioned by his subsequent surgery was a new injury. We first note that the surgery, and the allegedly resultant incontinence, was part of the course of treatment of his condition resulting from the alleged misdiagnosis and was not a new injury. See *Surgery Assoc. v. Kearby*, 199 Ga. App. 716, 718 (405 SE2d 723) (1991), citing *Whitaker*, supra; *Stone v. Radiology Svcs.*, 206 Ga. App. 851, 852-853 (426 SE2d 663) (1992) (physical precedent only) (*Whitaker* not applicable because injury had manifested itself at time plaintiff examined by defendants). This case is also distinguished from *Walker v. Melton*, 227 Ga. App. 149 (489 SE2d 63) (1997), and *Staples v. Bhatti*, 220 Ga. App. 404 (469 SE2d 490) (1996), cited by Hughley. In *Walker*, manifestations of the plaintiff's injury subsided for a time after the misdiagnosis, so that the date of any "new injury" was impossible to determine. Id. at 150-151 (1). Similarly, in *Staples*, although not a misdiagnosis case, the plaintiff showed no symptoms of cancer after the defendant failed to inform her that her mammography examination indicated the possibility of cancer. Instead, the cancer manifested itself several years later. Id. at 404-405. We concluded that the action filed by her

one year after the symptoms manifested themselves was not barred by the statute of limitation. Id. at 406 (1). But here, as discussed above, Hughley's alleged rectal pain was continuous before and throughout Dr. Rubin's treatment. The injury occurred no later than May 2, 1996, and the two-year statute of limitation therefore expired before Hughley filed his lawsuit.

In addition, we find no merit in Hughley's contention that Dr. Rubin's alleged misdiagnosis constituted a continuing tort. The cases cited by Hughley do not support a conclusion that a continuing tort was involved in this case, as they either are not misdiagnosis cases or are not medical malpractice cases at all. In addition, the "continuing tort" theory has been generally applied when a period of time elapsed between the commission of the alleged negligent act and the infliction of injury putting the recipient on notice of the injury. See *Piedmont Pharmacy v. Patmore*, 144 Ga. App. 160, 161 (1) (240 SE2d 888) (1977), cited by Hughley. But here, as discussed above, Hughley's symptoms and complaints were continuously present during his limited treatment by Dr. Rubin. Furthermore, *Patmore* was decided under prior law, when "the period of limitation commenced on the date on which the negligent or wrongful act occurred," *Young*, supra at 846, as opposed to the date of the injury. The trial court correctly granted Dr. Rubin's motion for summary judgment.

2. We next address that portion of the trial court's order denying summary judgment to Dr. Frazier. The court concluded that under the continuing treatment doctrine, material issues of fact existed as to the last date on which Dr. Frazier treated Hughley. That doctrine is no longer viable, as discussed above. But we find the trial court's order to be correct for a different reason.

In his complaint, Hughley alleged that Dr. Frazier committed fraud that tolled the statute of limitation. He maintained that Dr. Frazier misled him as to whether a medical specialist existed with respect to rectal problems but that he later learned of "a specialty in medicine for the treatment of the rectum, being proctology, and he realized at that time that Defendant Frazier had lied to him as to the non-existence of this specialty." He further alleged that he "relied to his detriment in believing and trusting" Dr. Frazier's statements concerning the medical specialty, that she knew her statement to be false, and that her statement debarred or deterred him from learning of the negligence.

In limited circumstances, a plaintiff in a medical malpractice action may be able to show that a defendant committed fraud that tolled the statute of limitation until the plaintiff's discovery of the fraud. See generally *Lasoya v. Sunay*, 193 Ga. App. 814, 815-816 (1) (389 SE2d 339) (1989). Here, the fraud issue was not addressed in Dr. Frazier's motion for summary judgment. She moved for summary

judgment solely on the ground that the statute of limitation had expired, without piercing Hughley's pleadings concerning her alleged fraud. Therefore, whether Dr. Frazier committed fraud tolling the statute of limitation remains a question of fact, and she was not entitled to summary judgment.[2] See *Collier v. Evans*, 199 Ga. App. 763, 766 (5) (406 SE2d 90) (1991).

*Judgments affirmed. Phipps, J., concurs. Barnes, J., concurs and concurs in judgment only as to Division 1.*

DECIDED MARCH 27, 2002 — ▮▮▮▮▮▮▮

*W. Dent Acree*, for appellant.

*McLain & Merritt, M. David Merritt, Carlock, Copeland, Semler & Stair, Thomas S. Carlock, Mary K. Greene, Michael A. Strickland,* for appellees.

---

[2] This opinion does not purport to determine the validity of the fraud claim. We hold only that the fraud issue was not addressed or decided below and that we therefore cannot say at this stage of the proceedings that the trial court erred in denying Frazier's motion for summary judgment.