### A02A2248. PRICE et al. v. CURRIE et al.
(580 SE2d 299)

BARNES, Judge.

Annette and Kenneth Price sued physicians Mark S. Currie and J. Steven Johnson for medical malpractice and loss of consortium on November 25, 1998, contending that excessive radiation damaged a nerve in Mrs. Price's arm, and that both doctors withheld their diagnosis of radiation damage until after the period of limitation had passed. The doctors answered and moved for summary judgment, which the trial court initially denied. After the Supreme Court reversed this court on the existence of the continuing treatment doctrine,[1] the defendants renewed their motion for summary judgment, which the trial court subsequently granted. The Prices appeal, and for the reasons that follow, we affirm.

The record in this case includes six depositions, from Mrs. Price, the two defendant doctors, two treating neurosurgeons, and an expert radiology oncologist. Mrs. Price contends that no one ever told her she had suffered a radiation injury to the brachial plexus nerve in her right arm, but rather hid that fact from her and allowed her to undergo useless neck surgery which did not improve her condition at all. She also contends that, because her doctors failed to disclose this diagnosis to her, the running of the statute of limitation should be tolled so that her claim of medical malpractice due to excessive radiation may be heard.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light

---

[19] See id.

[1] *Young v. Williams,* 274 Ga. 845 (560 SE2d 690) (2002).

most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001).

Viewed in this light, the record shows that Mrs. Price was diagnosed with right breast cancer and underwent a mastectomy in March 1994. The surgery was followed by chemotherapy,. radiation that ended in August 1994, and additional chemotherapy. Dr. Johnson was Price's radiation oncologist and Dr. Currie was her medical oncologist, who oversaw her cancer treatment.

Price began to complain of numbness and tingling in her hand in January 1995, which Dr. Currie thought could be due to side effects of the surgery, diabetic neuropathy, or her sleeping position. By August 1995, Price had numbness from her elbow down, and Dr. Currie suggested she undergo nerve conduction studies by a neurologist to see why she was having this problem. Price did not see the neurologist at that time because she was too busy at work.

During subsequent visits in 1995, Dr. Currie diagnosed Price as having an acute musculoskeletal strain, diabetic neuropathy, and following an MRI, both brachial plexopathy, or damage to her brachial plexus nerve, and cervical disc disease. In March 1996, Price saw neurosurgeon Dr. Kadis for nerve conduction studies. On her intake form, regarding her current complaint, Price wrote

> In the months following my operation and treatments [for cancer], I experienced a numbness in my right hand. My doctors thought it was a reaction to radiation, and I would lose use. of my arm and hand eventually. I requested an MRI of my neck. It is my greatest hope that you can help me regain the feeling in my hand and arm. I do realize that my condition may not be 100% relieved, but I will be thankful for a partial recovery.

According to Dr. Fredericks, Dr. Kadis's partner who undertook Price's care, a cervical myelogram in March 1996 revealed some abnormalities above and below the site of a previous surgical fusion. Price underwent two epidurals, which she said in April 1996 gave her significant pain relief. The doctor testified that this result indicated to him that at least part of her arm problem was related to cervical pathology, and that someone who improves with an epidural usually improves with surgery.

Price underwent a discectomy and fusion at two levels in August 1996, but testified that she experienced no pain relief from the surgery. Six weeks after the operation, in September 1996, Dr. Freder-

icks indicated in his office notes that Price had not improved, and that she had "brought up the point that maybe the pain in her arm is due to nerve damage from the radiation which was debated in the past."

Dr. Fredericks testified that he always thought the problem with Price's arm was caused by multiple factors, including cervical disease causing radiculopathy as well as brachial plexopathy, but he could not determine the percentage each contributed to the problem, which was complex because the plexopathy was progressing. He still thought the disc surgery was warranted, and would have performed it even if Price had then had a diagnosis of severe brachial plexopathy, which he said they had suspected all along. No treatment exists for brachial plexopathy, a condition that is rare and difficult to diagnose.

Dr. Currie testified that the odds of a brachial plexus injury from radiation were so small that it is not listed in the standard consent form as a possible side effect of treatment. He had suspected that a radiation injury was a possible contributor ever since her symptoms began because of Mrs. Price's abnormal sensitivity to the radiation treatment, and discussed the possibility of a radiation injury with her at every visit. Dr. Currie also testified that he discussed the possibility of a brachial plexus injury with the treating neurosurgeon.

1. The Prices filed their complaint on November 25, 1998, more than two years after Mrs. Price completed her radiation treatment or first complained of numbness in her hand, but less than two years after she contends she was first told she had a radiation injury. Mrs. Price argues that the trial court erred in granting summary judgment to Drs. Currie and Johnson because they committed fraud that tolled the running of the statute of limitation. She asserts that they misrepresented the true cause of her injury, which deterred her from discovering the cause before the statute ran.

OCGA § 9-3-71 (a) provides that "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." However, "[i]f the defendant [is] guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." OCGA § 9-3-96.

"The physician-patient relationship is a confidential one and silence or failure to disclose what should be said or disclosed can amount to fraud which tolls the statute. [Cits.]" *Lynch v. Waters*, 256 Ga. 389, 390 (349 SE2d 456) (1986). Failing to fulfill the duty to inform may constitute fraud that tolls the running of the statute of limitation, but a plaintiff must show not just a misdiagnosis but a

"known failure to reveal negligence in order to show fraud." (Punctuation and emphasis omitted.) *Rowell v. McCue*, 188 Ga. App. 528, 530 (373 SE2d 243) (1988).

Mrs. Price contends that Drs. Currie and Johnson misrepresented the true cause of her injury, changing their diagnoses as time went on, but only telling her that it was radiation damage after the limitation period had run. The most favorable inference that can be drawn from Mrs. Price's testimony and other evidence in the record is that Dr. Currie attributed her arm problem to several possible causes. This inference is confirmed by Mrs. Price's statement to neurosurgeon Kadis on her intake form in March 1996 that her doctors thought the numbness in her hand was a reaction to the radiation.

While the plaintiff argues in her brief that neurosurgeon Fredericks "unequivocally states he never received this information [that he thought Price's arm problem resulted from radiation damage] from Dr. Currie," what Dr. Fredericks said was that Dr. Currie never specifically brought to his attention the possible brachial plexopathy diagnosis. Dr. Fredericks also said, however, that both he and Mrs. Price considered the possibility of such a diagnosis from the beginning, and that the possibility was mentioned in all the notes on Price, such as her history and physical. He proceeded with the surgery despite the possibility of radiation damage because Mrs. Price had such a positive response to her second epidural, which in his opinion made it worth the risk to see if she could obtain relief from surgery.

As to Dr. Johnson, the radiation oncologist, Mrs. Price points out that he admitted that he never discussed the possibility of a radiation injury with her, and argues he therefore committed fraud by breaching his duty to inform her of the diagnosis. First, Dr. Johnson only saw Price during the radiation treatments in the summer of 1994, after which Dr. Currie continued as her treating physician, so the opportunity never arose for Dr. Johnson to inform Mrs. Price of his suspicions. Second, Dr. Johnson testified that he discussed those suspicions with Dr. Currie, whose treatment notes reflect that this diagnosis was included as a possible cause.

Further, Mrs. Price sought treatment for her arm injury from Drs. Kadis and Fredericks beginning in March 1996, more than two and a half years before she filed suit against Drs. Currie and Johnson.

> The statute of limitation is tolled under OCGA § 9-3-96 for fraudulent concealment only if a plaintiff is debarred or deterred from bringing an action by fraud on the part of a defendant. Once a plaintiff seeks the diagnosis or care of another doctor, she is no longer deterred from learning the true facts by any conduct of a defendant even if the other

doctor consulted does not diagnose the medical problem as arising from the defendant's improper treatment.

(Citation and punctuation omitted.) *Witherspoon v. Aranas*, 254 Ga. App. 609, 614 (2) (b) (562 SE2d 853) (2002). In this case, Dr. Currie tried to send Mrs. Price for nerve conduction studies to further diagnose her problem as early as August 1995. We conclude that the trial court did not err in granting summary judgment to the defendants on the basis that fraud did not toll the running of the statute of limitation.

2. Mrs. Price contends that material issues of fact exist concerning when the brachial plexopathy manifested itself. She argues that the statute did not begin to run until November 27, 1996, when she received a definitive diagnosis of brachial plexopathy after her unsuccessful neck surgery.

In medical malpractice actions, the statute of limitation begins running when the injury occurs rather than on the date of the negligent act. In most medical malpractice actions, the injury "occurs" when its symptoms manifest themselves to the patient, and this rule applies even if the patient is not aware of either the cause of the pain or of the connection between the symptoms and the negligent act or omission.

(Citations omitted.) *Witherspoon v. Aranas*, supra, 254 Ga. App. at 614 (2) (b). Under this analysis, the statute of limitation would have expired in the fall of 1996, two years after Mrs. Price began to experience numbness in her hand. The trial court did not err in granting summary judgment to the defendants on the basis that Mrs. Price's injury manifested itself more than two years before she filed suit.

3. Mr. Price contends that the trial court erred in dismissing his complaint for loss of consortium, arguing that it was filed within two years of the "end of misrepresentation from Dr. Currie and Dr. Johnson," and within four years of August 1996, the date the defendants claim the statute expired. The applicable statute of limitation for a consortium claim in a medical malpractice action is two years, not four. *Perry v. Atlanta Hospital &c.*, 255 Ga. 431 (339 SE2d 264) (1986). Accordingly, because of our ruling in Divisions 1 and 2, the trial court did not err in granting summary judgment to the defendants on Mr. Price's loss of consortium claim.

*Judgment affirmed. Adams, J., concurs. Ruffin, P. J., concurs in the judgment only.*

DECIDED MARCH 25, 2003.

*James G. Tunison, Jr.*, for appellants.
*Alexander & Vann, George R. Lilly II*, for appellees.