A03A2275. BRAHN et al. v. YOUNG et al.
(595 SE2d 553)

SMITH, Chief Judge.

This is an appeal from the denial of a motion for summary judgment filed by George Brahn, M.D. and his employer, Surgical Associates of Warner Robins, P.C. (collectively "Brahn") in a medical malpractice action filed against them by Sylvia and Sid Young. Brahn argued in the motion that the statute of limitation had expired at the

time the complaint was filed. The trial court concluded that the doctrine of collateral estoppel barred Brahn's arguments and that the statute of limitation had not expired. It denied the motion on these grounds. We granted Brahn's application for interlocutory appeal, and finding both rulings to be erroneous, we reverse.

On December 24, 1996, Brahn repaired Sylvia Young's hernia. She did not heal properly and over the next 19 months returned repeatedly to Brahn for treatment of her infected wound. Brahn last saw Young in July 1998. Young changed doctors, and during an exploratory procedure in November 1998, her new doctor discovered and removed Marlex mesh from Young's abdomen.[1] Young then saw an infectious disease specialist who treated her through the spring of 1999.

The Youngs filed this action June 22, 2000, against Brahn and his employer, alleging that in his treatment of Sylvia Young, Brahn negligently misdiagnosed the cause of her infection. The complaint alleged that following Young's surgery, she "continued to have persistent and chronic pain, drainage and other problems with the site of the hernia procedure" and that she allegedly sought treatment from Brahn "for these painful and chronic symptoms on a regular basis up to, including and subsequent to July 24, 1998." Attached to the complaint was the affidavit of Dr. Gary Ludi, which recited that Brahn "[f]ailed to properly diagnose the infection present in plaintiff's abdomen due to infected mesh despite numerous examinations including exploration procedures" and that Brahn "[f]ailed to properly treat a chronic infection case by removal of the infected mesh."

Brahn answered, raising a statute of limitation defense, and he also filed a separate motion to dismiss based on the same issue. The motion was denied by a cursory order entered August 30, 2000. The parties proceeded with discovery, and in January 2003, Brahn moved for summary judgment, again arguing that the complaint was barred by the statute of limitation. The trial court concluded that this issue was foreclosed by its August 2000 order denying Brahn's motion to dismiss and denied the motion under the doctrine of collateral estoppel. Alternatively, the trial court concluded that the limitation period had not expired. Brahn appeals from this order.

1. The trial court's ruling that collateral estoppel barred the summary judgment motion was error. This doctrine "precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in *another* action between the same parties or their privies." (Footnote omitted; emphasis supplied.) *Waldroup v.*

---

[1] Young underwent a previous hernia surgery in the same area. Neither Brahn's operative notes nor the notes of the surgeon who repaired the hernia in 1980 reflect use of mesh, however, and we have found no evidence in the record indicating its origin.

*Greene County Hosp. Auth.*, 265 Ga. 864, 866-867 (2) (463 SE2d 5) (1995). Brahn's motions to dismiss and for summary judgment, however, were filed in the same action. Furthermore, the denial of the motion to dismiss was interlocutory in nature and was subject to revision by the trial court any time before final judgment. See generally *Barber v. Collins*, 201 Ga. App. 104, 105 (2) (410 SE2d 444) (1991); *Glover v. J. C. Penney Cas. Ins. Co.*, 181 Ga. App. 753, 754 (1) (353 SE2d 587) (1987) (physical precedent only).

2. We next address Brahn's argument that this action was barred by the two-year statute of limitation for medical malpractice cases. OCGA § 9-3-71 (a). In its order denying Brahn's motion, the trial court stated, "The statute of limitations in a medical malpractice case runs from the date of the injury. In a misdiagnosis case, the date of the injury is the date of the misdiagnosis. . . . [T]here were two dates of misdiagnosis which were within two years of the Complaint being filed and thus, within the statute of limitations [sic]." It appears that the trial court reasoned that Young suffered a separate misdiagnosis, and therefore a new injury, each time Brahn examined her. The Youngs explicitly make this argument, stating in their appellate brief that Brahn committed malpractice on January 1, 1998, but that he also "committed malpractice on each subsequent date when he declared Mrs. Young was healing nicely. Negligence on one day does not grant a physician immunity from negligence on a following day." They argue that Brahn continued to misdiagnose Young when he examined her on two separate dates in July 1998 and that their June 2000 complaint therefore fell within the limitation period.

To the extent the Youngs are urging us to conclude that the misdiagnosis occurred on the last date of treatment under the "continuous treatment" theory, this theory was resoundingly rejected by the Supreme Court of Georgia in *Young v. Williams*, 274 Ga. 845 (560 SE2d 690) (2002). In *Young*, the Supreme Court stated that "[t]he legislatively-prescribed statute of limitation does not provide for the commencement of the period of limitation upon the termination of the health-care provider's treatment of the patient." Id. at 848. Rather, the statute of limitation in medical malpractice actions "begins running when the injury occurs." *Witherspoon v. Aranas*, 254 Ga. App. 609, 614 (2) (b) (562 SE2d 853) (2002). And

in most misdiagnosis cases, the injury begins immediately upon the misdiagnosis due to the pain, suffering, or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis; thus, the fact

that the patient did not know the medical cause of his suffering does not affect the applicability of OCGA § 9-3-71 (a).

(Citations omitted.) *Kane v. Shoup*, 260 Ga. App. 723, 724 (1) (580 SE2d 555) (2003). Georgia courts have identified "a limited exception in misdiagnosis cases when an injury occurs *subsequent* to the date of medical treatment, in which case the statute of limitation commences from the date the injury is discovered. [Cits.]" Id.

Young stated in a discovery response that she "immediately began experiencing postoperative complications, including but not limited to chronic drainage, pain, and infection." She explained during her deposition that she began to experience these problems "within the first month" following surgery. She testified that she began to become dissatisfied approximately two or three months after surgery when her wound "hadn't healed, and it got real bad." The Youngs' expert, Dr. Ludi, testified during his deposition that Brahn's conduct fell below the standard of care at least by October 23, 1997, because Brahn had "not adequately taken care of the problem." He testified further that because Brahn failed to perform exploratory surgery between October 23, 1997, and January 1, 1998, he breached the standard of care. Dr. Ludi stated his belief that if Brahn had discovered and removed the mesh, Young's chronic infection and discomfort "would have resolved."

Young has not alleged, and the record does not show, that she suffered any subsequent injury that would invoke the rule that the limitation period began to run on the date of the discovery of the injury. See generally *Kane*, supra at 724-725. On the contrary, Young's own evidence shows that her injury may have occurred as early as January 1997, approximately one month after surgery, when she began experiencing post-operative complications. She also submitted evidence that Brahn breached the standard of care at least between October 1997 and January 1, 1998. We need not decide which of these dates is the exact date of misdiagnosis because whether the injury occurred in January or October 1997 or in January 1998, the complaint was filed more than two years after any of these dates, at which time the statute of limitation had long since expired.

The Youngs strenuously contend that they are *not* relying on the "continuous treatment" theory rejected by the Supreme Court in *Young*, supra, and that *Young* is distinguished from this case. They argue that the defendant in *Young* "never made a misdiagnosis within the statute of limitations period" and contrast that situation with the facts in this case. They contend that Brahn misdiagnosed Sylvia Young's condition at least twice within the limitation period, during Young's last two visits. The Youngs maintain that the alleged

misdiagnoses that occurred during Sylvia Young's last two visits with Brahn on July 19 and July 24 constituted "separate negligence actions."

We do not agree with the Youngs that Brahn's alleged misdiagnoses during these final visits constituted separate acts of negligence that fell within the two-year limitation period. Contrary to the Youngs' arguments, the fact that Brahn may have continued to misdiagnose her condition beyond January 1, 1998, is not controlling. At least by that date, Brahn's "act of alleged negligence had occurred and the injury had manifested itself" through the symptoms described by Young. *Frankel v. Clark*, 213 Ga. App. 222, 223 (444 SE2d 147) (1994). The fact that Young "did not know the medical *cause* of her suffering did not affect the application of OCGA § 9-3-71 (a) when the evidence established that her injury had occurred and had physically manifested itself to her at the time of misdiagnosis. [Cits.]" Id. at 223-224. The injury from which Young was suffering when she was last examined by Brahn was the same injury from which she was suffering on and before January 1, 1998. See *Kane*, supra at 725. The complaint was filed more than two years after that date. Consequently, the Youngs' misdiagnosis claim "is time-barred, as is any claim of improper treatment based on the misdiagnosis." (Citation and footnote omitted.) *Oliver v. Sutton*, 246 Ga. App. 436, 438 (540 SE2d 645) (2000). See also *Frankel*, supra at 224 (injury occurred when symptoms manifested themselves to plaintiff, and defendant's failure to correct "previous negligence" not "additional acts of negligence").

*Judgment reversed. Ruffin, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 19, 2004 

*Chambless, Higdon & Carson, Joseph H. Chambless, David N. Nelson*, for appellants.

*James E. Lee II*, for appellees.