## A93A0886. ZECHMANN v. THIGPEN et al.

(437 SE2d 475)

BEASLEY, Presiding Judge.

Defendant optometrist Zechmann was granted interlocutory appeal from the denial of his motion for summary judgment in this professional negligence suit brought by plaintiffs Mr. and Mrs. Thigpen, individually and as parents and next friends of their minor daughter, Rachel. The issues are whether the statute setting limitation and repose for medical malpractice actions involving a minor, OCGA § 9-3-73, is applicable and whether it is a bar to suit.

The evidence construed favorably for the non-movant plaintiffs when conflicting, together with the undisputed facts, showed the following. Rachel, born July 6, 1980, was examined by Zechmann during three office visits, on April 23, 1985, June 3, 1985, and January 29, 1986. Mrs. Thigpen took Rachel for the initial visit within a week after noticing that Rachel's left eye was "dragging." At that first visit, Zechmann informed Mrs. Thigpen that Rachel had a "lazy eye," i.e., amblyopia, and recommended putting a patch over the child's good right eye for an hour a day in order to force the use of the problem eye. The patching did not work and it became obvious to Mrs. Thigpen that Rachel could not see out of her left eye. At the next visit, Zechmann prescribed eyeglasses. On the third and last office visit on January 29, 1986, Zechmann informed the mother that the blood vessels in the back of Rachel's left eye had not developed because she had been a premature baby, that there was nothing that could be done about it, and that the child would be blind in that eye for the rest of her life. Zechmann noted on Rachel's chart, "congenital nerve defect or optic nerve disease." Zechmann did not tell Mrs. Thigpen that optic nerve disease was the other possible cause of Rachel's problem. Had he done so the mother would have asked for further treatment and referral to a specialist.

The child's left eye became painful in February 1990, and Mrs. Thigpen took her to see another optometrist. That optometrist quickly referred them to an ophthalmologist, whom they saw the next day, February 16. The ophthalmologist immediately diagnosed that Rachel was suffering from Coats' disease, a serious and progressive eye disorder, and referred the child to an ophthalmologist, whom she visited on February 21. The ophthalmologist confirmed Coats' disease, which at that point had led to neovascular glaucoma. The painful glaucoma required the surgical removal of the child's left eyeball on April 24.

The specialist's opinion was that Rachel likely had Coats' disease when she was seen by Zechmann in 1985; the exotropia, i.e., abnormal turning of the eye, at that time was from the Coats' disease; a dilated fundoscopic examination at that time would have led to a correct di-

agnosis; instead no treatment was afforded the unrecognized Coats' disease which over a period of time led to neovascular glaucoma requiring enucleation; had a correct and prompt diagnosis been made and timely treatment given it is probable the eye would have been saved.

Plaintiffs filed the complaint for damages on January 6, 1992 with expert affidavit per OCGA § 9-11-9.1, alleging that Zechmann deviated from the standard of care of his profession generally by failing to detect the Coats' disease due to inadequate history and examination and by failing to refer the child to an ophthalmologist for treatment despite symptomatology, resulting in the eye loss. They further alleged that Zechmann fraudulently failed to disclose to them the condition of Rachel's left eye and falsely represented facts to them about the eye and its prognosis. Pearle Vision Center, Inc. was originally named as a co-defendant but was later voluntarily dismissed without prejudice from the suit.

1. OCGA § 9-3-73 applies to the alleged professional negligence by the optometrist.

For purposes of the article governing limitations for medical malpractice actions, OCGA § 9-3-70 defines "action for medical malpractice" in part as "any claim for damages resulting from the death of or injury to any person arising out of: (1) Health, medical, dental, or surgical service, diagnosis, prescription, treatment, or care rendered by a person authorized by law to perform such service. . . ." This article, which in OCGA § 9-3-71 limits medical malpractice actions to two years, is in derogation of the common law. Thus, it must be narrowly construed. *Redwine v. Arvaniti*, 83 Ga. App. 203, 206 (63 SE2d 222) (1951). However, its language plainly encompasses more than the practice of medicine. See *Faser v. Sears, Roebuck & Co.*, 674 F2d 856 (11th Cir. 1982), which discerned that "the practice of medicine" in OCGA § 43-34-20 (3) for purposes of licensing and registration is narrow whereas the meaning of "medical malpractice" in OCGA § 9-3-70 for purposes of limitation of actions is broad. It held that the two-year medical malpractice statute of limitation applied to pharmacists.

Inasmuch as plaintiffs contend that Rachel's injury arose from the health or medical service, diagnosis, and/or care which the optometrist rendered to her, their suit is subject to the limitations for malpractice actions prescribed by Article 4, Chapter 3, Title 9 of the Code of Georgia.

OCGA § 43-30-1 (2) (A) declares optometry to be the "learned profession" of "the art and science of visual care" and describes its practice in part as "the diagnosis and interpretation of the visual behavior of the human organism by the employment of any means other than the use of drugs, medicine, or surgery." The statutory subsection also provides that as to certified and pharmacologically trained op-

tometrists, nothing in the chapter would prohibit the "use, administration, or prescription of pharmaceutical agents topically applied to the eye for diagnostic purposes and treatment of ocular disease." Zechmann testified that optometrists dealt not only with problems that could be corrected by refraction but also with pathological diagnosis. Other than what is described in the definition of optometry in OCGA § 43-30-1 (2), an optometrist is prohibited from practicing medicine in any manner as defined by Georgia law. OCGA § 43-30-13. It is not alleged that Zechmann practiced medicine illegally in connection with the child but rather that he negligently practiced optometry.

2. The next question is whether the old or the new tolling provisions in Article 4 apply to this case.

OCGA § 9-3-73, which relates to the tolling of medical malpractice claims, originally gave the same tolling privilege to such actions as was provided generally for actions in contract under Article 5. Ga. L. 1976, p. 1363, § 1. It was substantially amended in 1987 to limit the time in which a cause of action by or on behalf of a minor or certain other disadvantaged persons could be filed. Ga. L. 1987, p. 887, § 2. It even applies to causes of action arising before the passage of the amendment but specifically provides a two-year grace period for the initiation of such proceedings. See OCGA § 9-3-73 (g); *Mansfield v. Pannell*, 261 Ga. 243, 245 (404 SE2d 104) (1991). " 'A statute of limitation is remedial in nature. The legislature can constitutionally provide for the retrospective application of a remedial statute provided a time be fixed subsequent to the passage of the statute which allows citizens affected by it a reasonable time to protect their rights.' [Cit.]" *Allrid v. Emory Univ.*, 249 Ga. 35, 37 (1) (b) (285 SE2d 521) (1982).

Whether plaintiffs' cause of action is deemed to have arisen at the times of Zechmann's attendance in 1985 or 1986 or later in 1990 when the child's undiagnosed Coats' disease resulted in neovascular glaucoma and enucleation of the eyeball, the amended OCGA § 9-3-73 applies. The complaint was filed after July 1, 1987, the effective date of the statutory amendment, so no question of retroactivity arises. See *Mansfield v. Pannell*, 194 Ga. App. 549, 550 (390 SE2d 913) (1990), aff'd 261 Ga. 243, supra, citing *Hunter v. Johnson*, 259 Ga. 21, 22 (376 SE2d 371) (1989), and *LFE Corp. v. Edenfield*, 187 Ga. App. 785, 788 (371 SE2d 435) (1988).

3. Plaintiffs' suit is not time-barred by the statute of limitation in OCGA § 9-3-73 (b).

Plaintiffs' case involves misdiagnosis. In most such cases, " 'the injury begins immediately upon the misdiagnosis due to the pain, suffering or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and

treated. [Cit.] The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis. [Cit.]' [Cit.]" *Surgery Assoc., P.C. v. Kearby*, 199 Ga. App. 716, 717 (405 SE2d 723) (1991). This is not always the case. *Whitaker v. Zirkle*, 188 Ga. App. 706 (374 SE2d 106) (1988).

The injury in this case was the development of the neovascular glaucoma necessitating enucleation of the child's eyeball. As in Whitaker, plaintiffs are not alleging that Zechmann's misdiagnosis and failure to disclose and refer her to an ophthalmologist caused the child to have Coats' disease; plaintiffs' evidence shows that she had it all along or at least during the time of the ministrations by Zechmann. Nor are plaintiffs complaining about the loss of vision in the eye because the vision was significantly impaired by the time of Zechmann's initial examination and the child was virtually blind in that eye by the time of the last office visit.

The gravamen of the complaint is the development of the painful glaucoma, approximately four years after Zechmann's last contact with the child, which ultimately required the eye's removal. The subsequent glaucoma and enucleation allegedly would not have occurred if the Coats' disease had been properly diagnosed by Zechmann at that time or if Zechmann had referred the child to a physician for further diagnosis, and appropriate treatment for the disease had begun. "When an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered. [Cit.]" *Whitaker*, supra at 708 (1) citing *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155) (1984). See also the writer's special concurrence in *Jones v. Lamon*, 206 Ga. App. 842, 847 (426 SE2d 657) (1992), in that effectively under OCGA § 9-3-71, there may be a "discovery-of-the-injury rule, at least when occurrence is simultaneous with knowledge of the occurrence." Compare *Stone v. Radiology Svcs., P.A.*, 206 Ga. App. 851 (426 SE2d 663) (1992).

The first manifestation of the severe glaucoma occurred in February 1990 when the child complained of eye pain and plaintiffs took her for treatment. This was the only new symptom experienced by the child since the examinations and treatment by Zechmann which indicated anything beyond the acknowledged and accepted loss of vision. Thus, the statute of limitation commenced in February 1990 and the suit filed on January 6, 1992 was not beyond it.

4. Nevertheless, absent fraud, plaintiffs' suit is laid to rest by the statute of repose in OCGA § 9-3-73 (c) (2).

This subsection provides that an action for medical malpractice may not be brought by or on behalf of a minor: "(A) After the tenth birthday of the minor if such minor was under the age of five years on the date on which the negligent or wrongful act or omission occurred; or (B) After five years from the date on which the negligent or wrong-

ful act or omission occurred if such minor was age five or older on the date of such act or omission."

The time for ultimate repose is not computed from the time the cause of action arises even in cases in which the injury is subsequent to the time of medical treatment, but rather it occurs in relation to the negligent or wrongful act or omission. See *Lasoya v. Sunay*, 193 Ga. App. 814, 815 (1) (389 SE2d 339) (1989), and *Whitaker*, supra at 707 (1), which recognize the distinction in the context of OCGA § 9-3-71 as amended July 1, 1985.

The potential inequity of calculating the time of ultimate repose from the alleged negligent act or omission, in a situation like the present where the injury is subsequent, is apparent. However, "[r]egardless of the desirability of arriving at a particular state of the law, this [C]ourt has no authority to legislate, and any . . . changes such as the measuring point of the statute of repose must be addressed to the legislature unless the subject statute is unconstitutional, which is not within this [C]ourt's authority to declare." *Bieling v. Battle*, 209 Ga. App. 874 (434 SE2d 719) (1993). *Bieling* discusses the same measuring point for the statute of repose in OCGA § 9-3-71 (b).[1]

Rachel was less than five years old on April 23 and June 5, 1985, the first two instances of alleged misdiagnosis and failure to refer for proper treatment. Under OCGA § 9-3-73 (c) (2) these claims were viable only until the child's tenth birthday in July 1990. As to the last alleged act of negligence on January 29, 1986, the child was more than five years of age, necessitating suit no later than January 29, 1991. It was filed on January 6, 1992.

5. Plaintiffs' contention that Zechmann's alleged withholding of information regarding the cause of the child's loss of vision constitutes time-tolling fraud is not substantiated.

The law is that " 'the statute of ultimate repose should not be applied to relieve a defendant of liability for injuries which occurred during the period of liability, but which were concealed from the patient by the defendant's own fraud.' [Cit.] 'Fraud sufficient to toll the statute must be actual rather than constructive, except where there exists a confidential relationship between the parties, such as that between physician and patient. Where persons sustain toward another a relation of trust and confidence, their silence when they ought to speak . . . is as much a fraud in law as an actual affirmative false representation. The question of the existence of such fraud, and the related question of the patient's exercise of diligence in discovering

---

[1] The constitutionality of OCGA § 9-3-71 (b) is currently under attack in *Craven v. Lowndes County Hosp. Auth.*, Case No. S93A0825, pending before the Supreme Court of Georgia.

the injury and the fraudulent concealment, are ordinarily for jury determination.' [Cits.]" *Lasoya v. Sunay,* supra at 815 (1). But there must be questions of fact, raised by the evidence, which need resolution.

There is no evidence that Zechmann purposefully withheld the alternate possibility for the cause of loss of the child's vision, i.e., optic nerve disease, as noted on the child's records. It cannot be presumed that he withheld it fraudulently rather than negligently or possibly without fault. Even if there was evidence of Zechmann's fraudulent concealment, it would not have tolled the running of the period of repose. Plaintiffs knew of the correct diagnosis and thus Zechmann's alleged malpractice on February 16, 1990, allowing them time to file suit within the period of repose. See *Hendrix v. Schrecengost,* 183 Ga. App. 201, 203 (2) (358 SE2d 486) (1987), in which the plaintiff knew the facts necessary to show malpractice before the running of the statute of limitation.

Because of the state of repose in OCGA § 9-3-73 (c) (2), defendant Zechmann is entitled to judgment in his favor as a matter of law.

*Judgment reversed. Cooper and Smith, JJ., concur.*

DECIDED OCTOBER 14, 1993 —
RECONSIDERATION DENIED NOVEMBER 3, 1993

*Dillard, Bower & East, Terry A. Dillard, Bryant H. Bower, Jr.,* for appellant.

*Hallman & Associates, Ronald W. Hallman, Sutton & Associates, Berrien L. Sutton,* for appellees.