## A05A1526. BROWN v. COAST DENTAL OF GEORGIA, P.C. et al.
### (622 SE2d 34)

BERNES, Judge.

On January 24, 2003, appellant Doris Jeanette Brown commenced her dental malpractice suit against appellees Dr. James J. Choi, D.D.S., Coast Dental of Georgia, P.C., and Coast Dental Services, Inc.[1] in the Superior Court of Gwinnett County, alleging misdiagnosis and mistreatment of her dental condition. The trial court granted summary judgment to appellees on the ground that Brown's suit was barred by the applicable two-year statute of limitation, which the trial court concluded began to run on December 7, 2000. Brown now appeals. Because we conclude that appellees have failed to come forward with undisputed evidence showing as a matter of law that Brown manifested symptoms of her injury caused by the alleged misdiagnosis more than two years before her suit was commenced, we reverse.

> The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When ruling on a motion for summary judgment, the opposing party must be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988).

*Hess v. Textron Automotive Exteriors*, 245 Ga. App. 264, 265 (1) (536 SE2d 291) (2000). With these standards in mind, we turn to the record in the present case.

*Factual background.* On October 26, 2000, Brown met with Dr. Choi, a dentist employed by Coast Dental, for a dental consultation. Dr. Choi, who had been a dentist for two years at the time of the consult, practiced in the area of general dentistry and was not a surgeon. Brown, a female in her early thirties, was missing 11 teeth, exclusive of her wisdom teeth, leading to large space discrepancies between the teeth on both the upper and lower rows. Brown's teeth also were improperly angled and misaligned. However, at the time of the initial consultation, Brown "was not experiencing any hot or cold sensitivity nor pain or discomfort" as a result of her dental condition.

---

[1] Coast Dental of Georgia, P.C. and Coast Dental Services, Inc. will be referred to collectively as "Coast Dental."

In evaluating the condition of Brown's mouth and teeth as part of the consultation, Dr. Choi did not consult with any other dentists or specialists, such as an orthodontist or periodontist. Nor did he make any preliminary study models or impressions of her teeth at that time. As to the general condition of Brown's teeth, gums, and mouth, Dr. Choi noted that Brown had minor gingivitis and spacing discrepancies caused by the multiple missing teeth.

Based on his evaluation, Dr. Choi proposed two alternative courses of treatment to Brown. The first option was for Brown to see an orthodontist, who would alter the location and alignment of her teeth before any future general dental work was conducted on her teeth by Dr. Choi. Dr. Choi did not recall, however, ever providing Brown with the name of a specific orthodontist with whom she could consult. The second, less expensive option proposed by Dr. Choi was for Brown to have him do all of the dental work himself by installing two permanent bridges between the missing teeth. Brown chose the second option: extensive bridgework by Dr. Choi without any prior orthodontic treatment.

Dr. Choi did not commence treatment of Brown on October 26, 2000. Rather, Brown returned to Dr. Choi's office on December 7, 2000, at which time Dr. Choi prepared her teeth for the two bridges by grinding several of her teeth with a diamond burr to reduce their height and width. Dr. Choi also took impressions of Brown's teeth and seated a provisional temporary bridge until the permanent ones could be fabricated from the impressions.

The nature of Brown's subsequent visits to Dr. Choi's office is a matter of dispute. Appellees contend that on December 28, 2000, Dr. Choi seated one of the permanent bridges with temporary cement but sent the other permanent bridge back to the lab for modification. Appellees further assert that on January 3, 2001, Dr. Choi seated both of the permanent bridges in Brown's mouth with permanent cement, and then, on January 15, 2001, adjusted the bridges by grinding them down in Brown's mouth.

In contrast, Brown contends that it was not until January 3, 2001 that any of the permanent bridges were seated with permanent cement. That is, Brown asserts that it was on January 3, 2001 that Dr. Choi seated one of the permanent bridges with permanent cement and sent the other bridge back to the lab for modification. Then, on January 15, 2001, Dr. Choi inserted the other permanent bridge that had been returned from the lab with permanent cement.

Regardless of how events unfolded up to January 15, 2001, it is undisputed that Brown next returned to see Dr. Choi on January 25, 2001. On that date, Brown expressed her dissatisfaction with the bridgework and complained to Dr. Choi that she "was experiencing hot and cold sensitivity due to [her] recent bridgework." Dr. Choi did

not recall Brown having previously complained of any problems with the bridgework. Brown contends that in response to her complaints, Dr. Choi "reassured [her] that everything would be okay after a few more adjustments" and performed additional grinding on the permanent bridges.

Dr. Choi's last day at Coast Dental was on January 31, 2001. Dr. Choi never saw or spoke with Brown again and left no directions or instructions with any other dentist at Coast Dental regarding Brown's future course of treatment. Dr. Choi did not consult with any other dentists concerning Brown or her dental condition at the time of his departure.

What followed was a series of return visits to Coast Dental in which Brown complained of painful hot and cold sensitivity, difficulty chewing on the left side of her mouth due to unevenness in the bridgework, and dissatisfaction with the ultimate look of the permanent bridges. Another dentist at Coast Dental noted in Brown's dental records that the bridges were "overcontoured" and would need to be removed and replaced if the painful sensitivity continued. However, Coast Dental ultimately refused to remove or replace Brown's bridgework despite her continued complaints and return visits.

Brown's expert witness, Dr. Brigham Moorman, D.D.S., later opined in his expert affidavit and deposition testimony that Dr. Choi's initial consultation and evaluation of Brown and the resulting treatment she received from Dr. Choi and Coast Dental constituted dental malpractice. Dr. Moorman identified three alleged violations of the standard of care by Dr. Choi that occurred during his October 26, 2000 initial consultation and evaluation of Brown: (1) Dr. Choi failed "to take preliminary study models, and articulate these study models, in order to evaluate [Brown's] dental case from a prosthodontic, restorative, and orthodontic perspective"; (2) Dr. Choi failed to diagnose Brown with periodontitis, a disease causing bone loss that could be seen from her radiographs; and (3) Dr. Choi failed to refer Brown to an orthodontist for evaluation of her dental condition.

According to Dr. Moorman, Dr. Choi's initial failure to recognize or take steps to properly evaluate the true condition of Brown's mouth led him to propose and then pursue the wrong course of treatment — extensive permanent bridgework without prior surgical corrections made to the location and alignment of Brown's teeth. Dr. Moorman opined that Dr. Choi never should have offered Brown such a treatment option, and that his decision to carry out the extensive bridgework, given Brown's true dental condition, was a violation of the standard of care. Dr. Moorman concluded that, as a result of Dr. Choi's violations of the standard of care, Brown's teeth were overcontoured; the midline of her teeth was off-center; she suffered from constant,

painful hot and cold sensitivity; and she was unable to bite properly on the left side of her mouth.

*Procedural history.* On January 24, 2003, Brown filed her complaint with the expert affidavit of Dr. Moorman attached in which she alleged that Dr. Choi had committed dental malpractice and had breached his contract and/or warranty with Brown, and that Coast Dental was vicariously liable for the damage caused by Dr. Choi.[2] Brown also alleged that "the statute of limitation did not start to run until sometime after January 25, 2001, when the injury manifested itself to [her]." Alternatively, Brown asserted that the limitation period had been tolled by OCGA § 9-3-97.1 because Coast Dental had not provided her with a complete copy of her requested dental records.

Appellees moved to dismiss Brown's complaint on the ground that the two-year statute of limitation for medical malpractice actions imposed by OCGA § 9-3-71 (a)[3] had run and had not been tolled. The trial court disagreed and denied the appellees' motions to dismiss, concluding that "[t]he two-year Statute of Limitations . . . started to accrue on January 25, 2001" and, alternatively, that the limitation period had been effectively tolled under OCGA § 9-3-97.1 at the time the suit was commenced.

Following discovery, appellees moved for summary judgment, again contending that the two-year statute of limitation had run on Brown's claims and had not been tolled. Appellees argued that the limitation period began to run on December 7, 2000 because that was the date that Brown was first injured as a result of Dr. Choi's alleged misdiagnosis, with the subsequent course of treatment after that date merely compounding Brown's injury. In this regard, appellees noted that Dr. Moorman testified that when Dr. Choi prepped and ground Brown's teeth on December 7, 2000, he fundamentally altered the "baseline" of her mouth and caused damage to her teeth.

The trial court granted appellees' motions for summary judgment. The order, as amended, stated in part:

---

[2] Brown filed her original complaint against appellees on December 6, 2002 but failed to attach an expert affidavit as required by OCGA § 9-11-9.1 (a). Brown voluntarily dismissed her original complaint without prejudice on or about January 22, 2003. It is undisputed that when Brown subsequently filed her new complaint on January 24, 2003 with an expert affidavit properly attached, she could not take advantage of the renewal provisions of OCGA § 9-2-61 (a). See OCGA § 9-11-9.1 (c); *Trucano v. Rosenberg*, 215 Ga. App. 153, 154 (450 SE2d 216) (1994). Thus, the operative commencement date for purposes of this appeal is January 24, 2003.

[3] OCGA § 9-3-71 (a) provides that "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." Brown's cause of action for breach of contract and/or warranty was subject to the same limitation period. See *Witherspoon v. Aranas*, 254 Ga. App. 609, 613 (2) (562 SE2d 853) (2002).

[T]he Court finds that this case falls under the general rule for misdiagnosis cases, and the date of injury must be considered to be the date of defendant's misdiagnosis. The date of injury would thus be December 7, 2000, the date the temporary bridge was seated in Plaintiff's mouth. After that date, the evidence shows only adjustments were made to the dental work. This Court does not find any genuine issues of material fact remaining in this case.

The trial court's order also noted, without further explanation, that "the ruling may seem contrary to [the Court's] ruling in the Defendants' Motion to Dismiss. However, additional evidence was obtained since that ruling through discovery which supports this Order." Brown now appeals.

1. Brown contends that the trial court erred in granting summary judgment to appellees because the limitation period did not begin to run until January 25, 2001 at the earliest, the date upon which undisputed evidence first appears in the record that the injury caused by Dr. Choi's diagnosis had manifested itself to Brown. When reviewing the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997). Based on our review, we agree with Brown.

As an initial matter, we note that all the parties argued below and agree on appeal that the present action should be characterized as one for alleged misdiagnosis by Dr. Choi resulting in mistreatment of Brown's true dental condition. In this regard, Brown's allegation that Dr. Choi violated the standard of care by failing to make and evaluate study models of her mouth involves an alleged failure to properly evaluate and diagnose the true condition of Brown's teeth and jaw. Likewise, Brown's allegation that Dr. Choi failed to recognize that she has periodontitis constitutes a claim for misdiagnosis. Finally, Brown's allegation that Dr. Choi violated the standard of care by failing to refer her to an orthodontist prior to treatment is predicated on an alleged failure to detect a condition in Brown's mouth requiring specialized treatment. Accordingly, we analyze Brown's dental malpractice claim under the framework applicable in medical misdiagnosis cases. See *Kane v. Shoup*, 260 Ga. App. 723 (580 SE2d 555) (2003) (failure of dentist to properly evaluate and treat plaintiff's overbite analyzed as misdiagnosis case); *Frankel v. Clark*, 213 Ga. App. 222 (444 SE2d 147) (1994) (failure of dentist to detect cyst, followed by improper placement of bridgework, analyzed as misdiagnosis case).

The two-year statute of limitation for medical malpractice cases imposed by OCGA § 9-3-71 (a) runs from the date of the plaintiff's

injury caused by the defendant's negligent act. *Young v. Williams*, 274 Ga. 845, 847 (560 SE2d 690) (2002); *Staples v. Bhatti*, 220 Ga. App. 404, 405 (1) (469 SE2d 490) (1996).

> In most misdiagnosis cases, the injury begins immediately upon the misdiagnosis due to the pain, suffering or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis.

(Citation and punctuation omitted.) *Walker v. Melton*, 227 Ga. App. 149, 150 (1) (b) (489 SE2d 63) (1997). The general rule, therefore, is that "in cases alleging failure to diagnose, the limitation period runs from the date of the misdiagnosis." (Citation and punctuation omitted.) *Sidlow v. Lewis*, 271 Ga. App. 112, 116 (2) (608 SE2d 703) (2004).

However, "[t]his is not always the case." (Citations and punctuation omitted.) *Sidlow*, 271 Ga. App. at 116 (2). "Georgia courts have carved out a limited exception in misdiagnosis cases when an injury occurs *subsequent* to the date of the medical treatment, in which case the statute of limitation commences from the date the injury is discovered." (Emphasis in original.) *Kane*, 260 Ga. App. at 724 (1). Put another way, when the patient does not incur a compensable injury until *after* the misdiagnosis is made, the limitation period begins to run when symptoms of the injury first manifest themselves to the patient.[4] "[T]his rule applies even if the patient is not aware of either the cause of the pain or of the connection between the symptoms and the negligent act or omission." *Witherspoon*, 254 Ga. App. at 614 (2) (b). See also *Brahn v. Young*, 265 Ga. App. 705, 709 (2) (595 SE2d 553) (2004).

Significantly, appellees concede that Brown suffered her injury subsequent to the alleged misdiagnosis of her dental condition by Dr. Choi on October 26, 2000.[5] Instead, appellees argue that Brown was

---

[4] See *Brahn v. Young*, 265 Ga. App. 705, 709 (2) (595 SE2d 553) (2004); *Walker*, 227 Ga. App. at 150-151 (1) (b); *Staples*, 220 Ga. App. at 406 (1); *Zechmann v. Thigpen*, 210 Ga. App. 726, 729 (3) (437 SE2d 475) (1993); *Whitaker v. Zirkle*, 188 Ga. App. 706, 707-708 (1) (374 SE2d 106) (1988).

[5] This is not surprising. Brown averred in her affidavit that she was not experiencing any hot and cold sensitivity, pain, or discomfort at the time of her initial consult with Dr. Choi on October 26, 2000. It was after Dr. Choi actually commenced the alleged improper course of treatment resulting from his misdiagnosis of Brown's true dental condition that Brown's teeth were "irreparably changed" and the "baseline of her mouth" was fundamentally altered, according to Dr. Moorman. In other words, Brown does not allege the misdiagnosis caused her to have 11 missing teeth or periodontitis. As Dr. Moorman noted, Brown had those conditions all along; they constituted her "natural state" or "baseline." Rather, the injury complained of is the alleged fundamental restructuring and disfigurement of Brown's mouth causing painful hot

injured on December 7, 2000, when Dr. Choi commenced his course of treatment and permanently altered Brown's teeth by grinding them with a diamond burr and installing temporary bridgework. Because it is undisputed that Brown did not incur an injury until after Dr. Choi misdiagnosed her and the extensive bridgework had begun, the operative question is: When did symptoms of the injury caused by the extensive bridgework first manifest themselves to Brown? See *Staples*, 220 Ga. App. at 406 (1); *Zechmann v. Thigpen*, 210 Ga. App. 726, 729 (3) (437 SE2d 475) (1993).

In addressing this question, we note that the defense of statute of limitation is an affirmative defense under OCGA § 9-11-8 (c), and so the burden was on appellees to show that the two-year statute of limitation barred Brown's malpractice suit. *Sidlow*, 271 Ga. App. at 116 (2). "[A] defendant moving for summary judgment based on an affirmative defense may not rely upon an absence of evidence in the record disproving the affirmative defense." (Citation omitted.) *Hess*, 245 Ga. App. at 266 (2). Thus, at the summary judgment stage, the burden was on appellees to come forward with evidence demonstrating as a matter of law that Brown's injury occurred and manifested itself more than two years before her malpractice suit was commenced. *Walker*, 227 Ga. App. at 151 (1) (b).

Appellees have not met their burden in this case. While appellees spend much time arguing that December 7, 2000 is the date upon which Brown was first injured as a result of Dr. Choi's alleged misdiagnosis because that was when the extensive bridgework was commenced, they have failed to point to any undisputed evidence in the record showing that Brown actually experienced symptoms of her alleged injuries caused by the installation of the extensive bridgework on a date more than two years before she filed her action.

In the case below, appellees argued that Brown was experiencing symptoms of her injury caused by the alleged misdiagnosis and subsequent bridgework by no later than January 15, 2001. Under appellees' version of the facts, Brown saw Dr. Choi on January 15, 2001 in order to have adjustments made to the permanent bridges installed earlier that month, which arguably would indicate that she was already experiencing discomfort or other symptoms from the faulty permanent bridgework. However, as discussed above, Brown

---

and cold sensitivity and biting problems, which resulted from the extensive bridgework done as a consequence of the previous misdiagnosis. See *Zechmann*, 210 Ga. App. at 729 (3); *Whitaker*, 188 Ga. App. at 708 (1). Compare *Kane*, 260 Ga. App. at 725 (1) (evidence demonstrated that injury to patient already existed at time of initial dental misdiagnosis, when patient's new orthodontist averred in affidavit that misdiagnosis and subsequent mistreatment merely delayed the correction of patient's lower jaw condition; there was no evidence of disfigurement or other new injury caused by the course of treatment).

disputes in her affidavit when the permanent bridgework was completed and thus what occurred at the January 15, 2001 appointment. It follows that a genuine issue of fact exists as to whether Brown was experiencing symptoms of her injury by January 15, 2001, precluding the grant of summary judgment to appellees on that ground.

Appellees also emphasized before the trial court that one of Brown's complaints was with the cosmetic result of the permanent bridgework allegedly caused by the failure to properly diagnose and address the true condition of her teeth, jaw, and mouth before installing the bridgework. Appellees suggested that any cosmetic problems would have been obvious on the date the bridgework was completed. Therefore, Brown clearly would have discovered that she had incurred an injury from the bridgework by no later than that date, which even under Brown's version of the facts would have been by January 15, 2001, more than two years before this suit was commenced.

We disagree with appellees' argument. At the summary judgment stage, we cannot simply infer that a bad cosmetic result would have been obvious immediately upon the completion of the dental procedure, without evidence in the record affirmatively proving that point as a matter of law. Indeed, Dr. Moorman opined during his deposition that problems with bridgework can take time for a patient to discover "because there has been such a change in the way [a patient's] teeth come together" and the patient's teeth and bite might even change somewhat after the work is completed. Under these circumstances, we are constrained to give Brown "the benefit of all reasonable doubts and constru[e] the evidence and all inferences and conclusions therefrom in [her] favor." (Citation omitted.) *Hess*, 245 Ga. App. at 266 (1).

Contrary to appellees' assertions, the earliest undisputed evidence showing that Brown had manifested symptoms of her injury caused by the misdiagnosis and subsequent bridgework is the notation on Brown's dental records for January 25, 2001. On that date, the dental records reflect that Brown complained to Dr. Choi that she was "experiencing hot and cold sensitivity due to [her] recent bridgework" and "was dissatisfied with the appearance of the new bridgework." In his deposition testimony, Dr. Choi did not recall Brown having complained of any problems with the bridgework or discomfort prior to that date. And, although appellees deposed Brown on July 22, 2003, they never took steps to have the deposition transcript made part of the summary judgment record so that the trial court could consider it. Thus, the current state of the record is such that there is no undisputed evidence showing that Brown manifested any symptoms of her injury caused by the extensive bridgework prior to

January 25, 2001.[6] At this stage of the proceedings, we cannot infer that Brown must have been experiencing symptoms prior to the date she actually complained to Dr. Choi, because to do so would require us to impermissibly view the evidence in the light most favorable to the *movants*. *Hess*, 245 Ga. App. at 266 (2).

Given the "scant evidence" in the record concerning when symptoms of Brown's injury were first manifested to her, the grant of summary judgment in favor of the appellees was inappropriate. *Sidlow*, 271 Ga. App. at 117 (2). See also *Walker*, 227 Ga. App. at 151 (1) (b). Since Brown filed suit less than two years from January 25, 2001, the earliest date upon which there is undisputed evidence that Brown was experiencing symptoms, her dental malpractice case was not time barred under OCGA § 9-3-71 (a).

2. Brown also contends that the trial court erred in granting summary judgment to appellees because the limitation period was tolled pursuant to OCGA § 9-3-97.1. Based on our decision in Division 1, Brown's second enumeration of error is rendered moot.

*Judgment reversed. Blackburn, P. J., and Miller, J., concur.*

DECIDED OCTOBER 7, 2005.

*Stephen J. Wasley*, for appellant.
*Carlock, Copeland, Semler & Stair, Matthew G. McLaughlin, Douglas W. Smith, Robert E. Spears, Jr.*, for appellees.

---

[6] Unlike in several of the cases cited by appellees, appellees have not come forward with undisputed evidence showing that Brown was experiencing pain or other symptoms throughout the course of her treatment with Dr. Choi from December 7, 2000 onward or that she was already in pain or discomfort at the time of her initial misdiagnosis on October 26, 2000. Compare *Williams v. Young*, 258 Ga. App. 821, 824 (575 SE2d 648) (2002); *Hughley v. Frazier*, 254 Ga. App. 544, 547 (1) (562 SE2d 821) (2002) (physical precedent only); *Frankel v. Clark*, 213 Ga. App. at 223.