A05A1339. BURT et al. v. JAMES et al.

(623 SE2d 223)

SMITH, Presiding Judge.

Adam and Susan Burt brought this action in April 2003 against Dr. Plas James and the Atlanta Spine Institute, P.C., the professional association that employed Dr. James (collectively "Dr. James"). They alleged medical malpractice and loss of consortium resulting from Dr. James's failure to properly diagnose and treat an infection that developed after Dr. James performed back surgery on Adam Burt in January 2001. The trial court granted summary judgment to Dr. James, finding that Burt did not suffer a "new injury" in April 2001 and that the Burts's action was therefore barred by the two-year statute of limitation for medical malpractice. We agree with the trial court, and we therefore affirm the trial court's entry of summary judgment in favor of Dr. James.

Adam Burt (hereinafter "Burt") was a professional hockey player when he was thrown into the wall of the ice rink during a game in December 2000, injuring his back. Dr. James performed a microdiskectomy on January 5, 2001 to relieve the resulting back pain. It is undisputed that shortly after the surgery, Burt developed an infection at the incision site. He was seen on January 29, 2001 by Dr. Stephen Marlowe, an infectious disease specialist, who prescribed antibiotics.

Burt saw both Dr. James and Dr. Marlowe, as well as other doctors, several times during January and February. Both physicians noted redness, swelling, and purulence around the incision site, and they continued treating Burt with antibiotics. In early March 2001, Dr. James performed another surgery to drain fluid from Burt's back. By the end of March 2001, the doctors were noticing back swelling and residual weakness in Burt's foot. The last time Dr. James saw Burt, on April 3, 2001, he noted swelling at the operative site, but he noted that Burt was "improving."

Burt, however, continued to experience back pain. In Burt's words, his symptoms remained unchanged and were "pretty consistent," with swelling and pain radiating from the left side of the wound "down into my glute." Burt's wife also testified on her deposition that her husband's symptoms "from January until just before the third surgery were always similar." Burt was eventually diagnosed with staphylococcal septicemia, nerve compression, and osteomyelitis, necessitating a third back surgery, this time a spinal fusion, performed by Dr. Reg Haid on May 2, 2001. Although his back eventually healed, Burt is no longer a professional hockey player.

When this action was filed, to satisfy the requirements of OCGA § 9-11-9.1, the Burts attached an affidavit from Dr. James Aragona, an orthopedic surgeon. Dr. Aragona opined that Dr. James breached

the applicable standard of care on January 30, 2001, by failing "to immediately ascertain the need for and perform surgery to treat Adam Burt's back infection" rather than treating Burt with antibiotics.

After discovery, Dr. James filed a motion for summary judgment. He contended that because the malpractice alleged was Dr. James's misdiagnosis and mistreatment of the infection, the statute of limitation commenced running on January 30, 2001, when the Burts alleged Dr. James had been negligent, and it expired on January 30, 2003. The Burts's position was that the statute of limitation did not begin running until April 21, 2001, when Burt suffered weight loss, osteomyelitis, knee and ankle swelling, and severe back pain, which constituted a "subsequent injury . . . manifested by new symptoms."

Summary judgment is appropriate when no genuine issue of material fact remains for the jury and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56. Summary adjudication is proper if a defendant/movant shows that the evidence presented is insufficient to create a jury issue on at least one essential element of the plaintiff's case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). To avoid the entry of summary judgment, the plaintiff/respondent must come forward with evidence that rebuts the movant's evidence and is sufficient to create a jury issue. Id. In this case, the facts are undisputed. Resolution hinges on whether Dr. James is entitled to summary judgment as a matter of law because the action is barred by the expiration of the two-year limitation period for medical malpractice set forth in OCGA § 9-3-71 (a).

The statute provides that medical malpractice actions must be brought "within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." OCGA § 9-3-71 (a). In construing the statute, our courts have formulated a general rule for cases in which the plaintiff alleges misdiagnosis: In such cases, "the injury begins immediately upon the misdiagnosis due to the pain, suffering, or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis." (Citation and punctuation omitted.) *Frankel v. Clark*, 213 Ga. App. 222, 223 (444 SE2d 147) (1994).

As with most rules, at least one exception exists. In *Whitaker v. Zirkle*, 188 Ga. App. 706 (374 SE2d 106) (1988), a case involving a misdiagnosis by a pathologist, a tissue sample taken from the patient's mole was erroneously read as benign. The patient subsequently died when the cancer that had been present all along metastasized. The trial court denied the defendant pathologist's motion for summary judgment, which was brought on the ground that the

statute of limitation began running on the date the misdiagnosis occurred, and its expiration barred the action. This court affirmed, acknowledging that in most cases the statute begins running on the date of the misdiagnosis, but because this particular plaintiff suffered no symptoms after the misdiagnosis until seven years later, the injury alleged was not the misdiagnosis, but the metastasis. Id. at 707. This exception to the general rule was stated as follows: "When an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered. [Cit.]" Id. at 708 (1).

In response to the defendants' motion for summary judgment, the Burts sought refuge in this exception. They claimed that Burt suffered a "subsequent injury" when in April 2001, he experienced severe back pain and was diagnosed with bacteremia, nerve compression, and osteomyelitis, necessitating spinal fusion surgery. They argued that this "subsequent injury" brought this action within the *Whitaker* exception, placing the beginning of the limitation period in April 2001 and making timely this action filed in April 2003. The trial court rejected this theory. The trial court reasoned that in *Whitaker* the patient was asymptomatic after the misdiagnosis; here, though, "the undisputed evidence," including Burt's own deposition testimony, is that Burt experienced ongoing symptoms from the time of the first surgery performed by Dr. James. Because Burt was not asymptomatic, the trial court ruled that the *Whitaker* exception did not apply, and the statute of limitation began running in January 2001, the date of the misdiagnosis. The Burts's action was therefore barred after the limitation period expired, in January 2003.

On appeal, the Burts advance the same theory the trial court rejected. Although they raise three enumerations of error, the contentions are so intertwined that we need only decide whether the exception carved out in *Whitaker* applies to the facts of this case.

The Burts "concede that the *Whitaker* exception is not always applicable in . . . misdiagnosis cases." They argue, however, that the trial court erred in stating that *Whitaker* applies only when the plaintiff is asymptomatic after the misdiagnosis. They contend that when a subsequent injury results from the misdiagnosis, the limitation period does not begin to run until symptoms of the *new injury* are manifest, even when the plaintiff has experienced symptoms after the initial misdiagnosis. In support of their position they rely principally on *Walker v. Melton*, 227 Ga. App. 149 (489 SE2d 63) (1997), and *Zechmann v. Thigpen*, 210 Ga. App. 726 (437 SE2d 475) (1993), both of which followed *Whitaker.* Both cases are easily distinguishable.

The Burts point to *Walker* as an example that demonstrates that the *Whitaker* exception applies even when the plaintiff has been

experiencing symptoms following the misdiagnosis. But it is clear in *Walker* that even though the plaintiff experienced symptoms after the misdiagnosis for a brief period of time, those symptoms ceased and did not recur until more than 17 months later. Id. at 149. When the plaintiff again sought treatment, it was discovered that his spine was broken and had continued to deteriorate. Id.

This court reversed the grant of summary judgment in favor of the doctor, finding that the doctor's failure to perceive the initial spinal problem on x-ray was not the cause of the later problem; the "new injury" probably would have occurred even with proper diagnosis and treatment. The fracture in *Walker* occurred at some time between the misdiagnosis and the correct diagnosis, when the plaintiff was not experiencing symptoms. Under the particular circumstances of that case, it was impossible to discern when the new injury occurred. This court therefore adapted the *Whitaker* exception and applied it. The *Walker* court held that if "a misdiagnosis results in subsequent injury that is difficult or impossible to date precisely, the statute of limitation runs from the date symptoms attributable to the new injury are manifest to the plaintiff. [Cits.]" Id. at 151 (1) (b).

Burt's situation is exactly opposite. With proper diagnosis and treatment, the resultant problems would not have occurred; here, the misdiagnosis and mistreatment *were* the cause of the "injury" for which Burt sought recovery.

In *Zechmann*, supra, 210 Ga. App. 726, an optometrist treated a child and discovered an optic nerve disease but failed to inform either the child or her parents. Id. About four years later, when the disease was discovered, the child had developed a painful form of glaucoma necessitating removal of the eye. Id. at 729 (3). We again acknowledged the general rule but applied the *Whitaker* exception. Even though the patient was asymptomatic for four years after the misdiagnosis, we held that the patient's suit against the optometrist was not time-barred. We reached that conclusion because the only new symptom the child experienced after the optometrist's misdiagnosis was eye pain, and the statute of limitation did not begin to run until the child felt and complained of that symptom. The suit, which was brought within two years from the time the new symptom was experienced, was therefore timely. Id.

Here, in contrast, Burt experienced and complained of redness, swelling, and pain at the incision site on his back shortly after his original surgery in January 2001, and it continued until April 2001. The symptoms Burt experienced may have been more painful, more extensive, and more debilitating in April than in January, but that was a matter of degree. Burt's insistence that the symptoms he experienced in April were a "subsequent injury" is simply belied by

the record. As discussed above, Burt and his wife both testified that his condition remained fairly constant from January to April 2001.

Using various arguments, plaintiffs have attempted unsuccessfully to place the facts of their cases within the *Whitaker* exception, but the general rule has been applied consistently since its announcement. See, e.g., *Kane v. Shoup*, 260 Ga. App. 723, 725 (1) (580 SE2d 555) (2003) (no subsequent injury when braces and surgery recommended three years after orthodontist failed to properly correct lower jaw condition); *Williams v. Devell R. Young, M.D., P.C.*, 258 Ga. App. 821, 824 (575 SE2d 648) (2002) (no subsequent injury because plaintiff experienced symptoms continuously throughout doctor's treatment); *Hughley v. Frazier*, 254 Ga. App. 544, 547-548 (1) (562 SE2d 821) (2002) (physical precedent) (incontinence resulting from surgery was part of course of treatment for original condition, not new injury); *Stone v. Radiology Svcs.*, 206 Ga. App. 851-853 (2) (426 SE2d 663) (1992) (physical precedent) (no new injury because unlike *Whitaker* plaintiff, plaintiff was already suffering from effects of brain tumor when misdiagnosed).

Our courts have been reluctant to invoke the *Whitaker* exception except in the most extreme circumstances. Moreover, this court has held explicitly that "the limited exception for subsequent injury cases, which was created by *Whitaker v. Zirkle*, is confined to those in which the plaintiff remains asymptomatic for a period of time following the misdiagnosis." (Citation and footnote omitted.) *Harrison v. Daly*, 268 Ga. App. 280, 284 (601 SE2d 771) (2004). The trial court properly applied that holding. The misdiagnosis was the injury, and the trial court correctly concluded that the *Whitaker* exception did not apply.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED NOVEMBER 15, 2005 — ▮▮▮▮▮▮▮▮▮

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Patrick B. Moore*, for appellants.

*Love, Willingham, Peters, Gilleland & Monyak, Robert P. Monyak, Andrew E. Goldner*, for appellees.