A05A1688. WARD et al. v. BERGEN et al.
(626 SE2d 224)

ELLINGTON, Judge.

Anne and William Ward, plaintiffs in the court below, appeal from the grant of summary judgment to William S. Bergen, M.D., and Eagle's Landing Surgery, P.C., in this medical malpractice case. The Wards contend the trial court erred by construing the evidence against them and misapplying the law when it determined that the cause of action was barred by the two-year statute of limitation. We agree and reverse the grant of summary judgment.

> Summary judgment should be granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). Our review of a grant of summary judgment is de novo, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Walker v. Melton*, 227 Ga. App. 149 (489 SE2d 63) (1997).

So viewed, the record shows that Mrs. Ward had a routine mammogram in 1998. The mammogram indicated that there were some abnormalities in one of her breasts, and her physician referred her to Dr. Bergen, who performed a surgical biopsy. The pathology report showed that Mrs. Ward had low-grade, intraductal carcinoma in situ ("DCIS"), localized precancerous growths in the milk ducts of the breast. According to Mrs. Ward, however, Dr. Bergen failed to tell her of this diagnosis and, in fact, never said the word "carcinoma" or used the term "DCIS." Instead, Dr. Bergen informed Mrs. Ward that she had abnormal calcifications in her breast that were benign but might increase her risk of developing breast cancer later in life. Dr. Bergen did not suggest any further treatment, but only recommended that Mrs. Ward get regular mammograms in the future.

Shortly thereafter, Mrs. Ward moved to New York and began seeing a different physician. Mrs. Ward had a mammogram in 1999 which showed the same abnormalities as in the 1998 mammogram. Mrs. Ward told the radiologist that she had had a biopsy and that she had been told the abnormalities were benign. Because there had been no change in the mammograms, the radiologist told Mrs. Ward that

her mammogram was "okay." Another mammogram in 2000 yielded similar results, showing no changes from the two previous mammograms. Based upon Dr. Bergen's characterization of the abnormalities as benign, Mrs. Ward and her physicians took no additional action to biopsy or treat the abnormalities following the 1999 or 2000 mammograms. According to Mrs. Ward, she did not notice any changes during her regular breast self-examinations from 1998 through August 2002, she did not have any pain or other physical symptoms that indicated a problem was developing in her breast, and her physicians did not detect any different abnormalities during their examinations.

In August 2002, another routine mammogram showed changes in Mrs. Ward's breast tissue. A physician performed a biopsy in November 2002, which revealed that Mrs. Ward had developed invasive breast cancer that had metastasized to her lymph nodes. As a result, Mrs. Ward had a mastectomy, chemotherapy, and radiation therapy.

In July 2003, the Wards sued Dr. Bergen and his medical practice, Eagle's Landing Surgery, P.C. (collectively, "Dr. Bergen") for medical malpractice.[1] In their complaint, the Wards claim Dr. Bergen failed to communicate to Mrs. Ward an accurate diagnosis and to recommend proper treatment for the DCIS. They claim that proper treatment, such as complete surgical removal of the growths or radiation therapy, would have eliminated the DCIS. The Wards also contend that, as a result of Dr. Bergen's failure to recommend proper treatment for the DCIS, Mrs. Ward developed an invasive, metastasized cancer of the breast and lymph nodes and that she now has a 30 percent chance of dying from breast cancer. According to the Wards, the alleged injury in this case is not the DCIS, but the invasive cancer that developed later as a result of the untreated DCIS. Dr. Bergen filed a motion for summary judgment, claiming the two-year statute of limitation barred the Wards' claims.

The trial court granted the motion for summary judgment, finding the limitations period began in 1998, when Dr. Bergen failed to tell Mrs. Ward that she had DCIS and failed to recommend appropriate treatment. The court also found that Mrs. Ward "remained symptomatic following her misdiagnosis and mistreatment," referring to her 1999 mammogram which showed the same abnormalities as the 1998 mammogram. Because the Wards did not sue Dr. Bergen until 2003, the trial court found the two-year statute of limitation barred their claims.

---

[1] Mr. Ward sued for loss of consortium.

On appeal, the Wards contend that the trial court failed to construe the record in a light most favorable to them, as the nonmovants, when deciding Dr. Bergen's motion for summary judgment and that the trial court improperly made findings on disputed issues of fact when it concluded that the two-year statute of limitation had expired.[2] They rely on Georgia cases which provide that, when a health professional misdiagnoses or improperly treats a problem, and that problem later develops into a new and different medical condition, the statute of limitation period does not begin to run until the patient experiences symptoms of the new condition. Based upon our review of this case, we agree with the Wards' argument and reverse the trial court's grant of summary judgment to Dr. Bergen.

Under OCGA § 9-3-71 (a), a plaintiff must file a medical malpractice action "within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." Generally, in malpractice cases involving a misdiagnosis that resulted in a failure to properly treat a condition, the "injury" referred to in OCGA § 9-3-71 (a) occurs at the time of the misdiagnosis. *Whitaker v. Zirkle*, 188 Ga. App. 706, 707 (1) (374 SE2d 106) (1988). This is because the patient usually continues to experience pain, suffering, or economic loss from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. Id. Under these circumstances, "the misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis." (Citation omitted.) Id. Therefore, the limitation period usually runs from the date of the misdiagnosis. *Brown v. Coast Dental of Ga.*, 275 Ga. App. 761, 766 (1) (622 SE2d 34) (2005).

Georgia's appellate courts, however, have carved out a "limited exception" in cases where a misdiagnosis and failure to provide proper treatment results in the development of a new and different injury than that which existed at the time of the misdiagnosis. *Brown v. Coast Dental of Ga.*, 275 Ga. App. at 766 (1). In those cases, "the focus of OCGA § 9-3-71 (a) is not [on] the date of the negligent act but the consequence of the defendant's acts on the plaintiff. The result is that when an injury occurs subsequent to the date of [the] medical

---

[2] Because the only issue on appeal is whether the trial court correctly decided as a matter of law that the statute of limitation had expired, we do not address the issues of whether Dr. Bergen, in fact, failed to inform Mrs. Ward of the proper diagnosis, whether such failure to inform and to provide appropriate treatment caused or contributed to the development of her invasive cancer, or whether Mrs. Ward and her other physicians reasonably relied on Dr. Bergen's characterization of her condition as benign. All of these disputed issues involve questions of negligence and causation that are properly left to the jury. See *Walker v. Giles*, 276 Ga. App. 632, 639 (1) (624 SE2d 191) (2005) ("Questions regarding causation are peculiarly questions for the jury except in clear, plain, palpable and undisputed cases.") (citation and punctuation omitted).

treatment, the statute of limitation commences from the date the injury is discovered." (Citations and punctuation omitted.) *Sidlow v. Lewis*, 271 Ga. App. 112, 116 (2) (608 SE2d 703) (2004). Further, "[w]hen a misdiagnosis results in subsequent injury that is difficult or impossible to date precisely, the statute of limitation runs from the date symptoms attributable to the new injury are manifest to the plaintiff." (Citations omitted.) *Walker v. Melton*, 227 Ga. App. at 151 (1) (b).

This Court has previously applied this "limited exception" to cases involving the subsequent metastasis of an existing cancerous condition, most notably in *Whitaker v. Zirkle*, 188 Ga. App. at 707-708 (1). In *Whitaker*, the defendant physician allegedly failed to properly diagnose and treat a patient's cancerous mole. Id. at 706. The patient experienced no new symptoms for seven years after the misdiagnosis, but then was diagnosed with metastatic cancer after developing nodules and bruises. Id. The patient sued the physician, claiming that her injury was the metastatic cancer and that the metastasis would not have occurred if the cancerous mole had been properly diagnosed and treated at the time of the original biopsy. Id. at 707 (1). The physician moved for summary judgment, contending the statute of limitation barred the claim. Id. In affirming the denial of summary judgment to the physician, this Court recognized that

> [t]he injury complained of is the subsequent metastasis of cancerous cells which remained at the site where the mole was removed. The subsequent metastasis allegedly would not have occurred if the cancer had been properly diagnosed and treated at the time of the original biopsy. When an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered.

(Citation omitted.) Id. at 708 (1). The Court held that, because the plaintiff experienced no symptoms indicating that the cancer had metastasized, there was a jury issue as to when the metastasis occurred. Id. Therefore, the trial court properly refused to find, as a matter of law, that the statute of limitation barred the plaintiff's claim. Id.

This Court subsequently found that the *Whitaker* exception applied to facts that were remarkably similar to the instant case. In *Staples v. Bhatti*, 220 Ga. App. 404, 405 (469 SE2d 490) (1996), a physician's office failed to notify a patient that her mammogram indicated the possibility of cancer. Three years later, the patient discovered a lump in her breast and had another mammogram, which showed that she had cancer. Id. A subsequent pathology report

revealed that the cancer had spread to the patient's lymph nodes. Id. This Court noted that the injury at issue was the growth of the cancer and its invasion of the lymph nodes, which increased the patient's risk of further metastasis. Id. at 405-406 (1). Because it was impossible to determine exactly when the cancer spread, and the patient did not experience any symptoms of the disease until she discovered the lump, this Court found that the trial court erred in finding the statute of limitation had expired and in granting summary judgment to the physician on the malpractice claim. Id. at 406 (1).

In this case, the Wards sued Dr. Bergen for damages resulting from the development of the invasive, metastasized cancer, which they claim would not have occurred if Dr. Bergen had informed Mrs. Ward of the proper diagnosis and had treated the DCIS in 1998. Therefore, the relevant question is when did Mrs. Ward first experience symptoms of the invasive cancer that would have started the running of the two-year statute of limitation?

> In addressing this question, we note that the defense of statute of limitation is an affirmative defense under OCGA § 9-11-8 (c), and so the burden was on [Dr. Bergen] to show that the two-year statute of limitation barred [the Wards'] malpractice suit. A defendant moving for summary judgment based on an affirmative defense may not rely upon an absence of evidence in the record disproving the affirmative defense. Thus, at the summary judgment stage, the burden was on [Dr. Bergen] to come forward with evidence demonstrating as a matter of law that [Mrs. Ward's] injury occurred and manifested itself more than two years before her malpractice suit was commenced.

(Citations and punctuation omitted.) *Brown v. Coast Dental of Ga.*, 275 Ga. App. at 767 (1). See also *Walker v. Melton*, 227 Ga. App. at 151 (1) (accord). Accordingly, under this standard, Dr. Bergen is entitled to summary judgment only if the undisputed evidence showed that Mrs. Ward experienced symptoms of her invasive cancer before July 16, 2001, two years prior to the filing of her malpractice suit.

The record contains evidence that Mrs. Ward's invasive cancer is a different disease than the DCIS and is, therefore, a new injury which occurred subsequent to the misdiagnosis.[3] Although Mrs.

---

[3] Although Dr. Bergen argues on appeal that the invasive, metastasized cancer is simply a different stage of the same disease, he testified in his deposition that DCIS is "not necessarily a cancer, per se. . . . [I]t's a precursor lesion that can become cancer at some point. But it's not invasive cancer." He also admitted that invasive breast cancer is "a completely different entity than an intraductal carcinoma."

Ward's two mammograms in 1999 and 2000 showed some abnormal calcifications, these same calcifications were present at the time of the 1998 mammogram, prior to Dr. Bergen's biopsy and alleged malpractice. This Court has previously held that the continuation or recurrence of the same symptoms as those that existed at the time of the malpractice does not put a plaintiff on notice that she has suffered a new injury. See *Screven v. Drs. Gruskin & Lucas, P.C.*, 227 Ga. App. 756, 758-759 (2) (490 SE2d 422) (1997) (physician received notice that a joint implant he had inserted in a patient was defective, but he failed to notify the patient until two years later; the patient's joint continued to deteriorate during that time but she did not experience any new symptoms, so the statute of limitation did not begin to run until the patient received notice of the defect).

Further, there is no evidence that either the 1999 or 2000 mammogram showed signs of the invasive cancer, nor is there any evidence that Mrs. Ward experienced any symptoms prior to August 2002 that indicated the development of the invasive cancer. In fact, no one has offered an opinion as to when the cancer developed and began to invade the surrounding tissues, and there is no evidence that anyone even suspected that the cancer was present prior to Mrs. Ward's routine mammogram in August 2002. Therefore, Dr. Bergen cannot meet his burden of demonstrating as a matter of law that the statute of limitation began to run at some point prior to July 2001, because there is no evidence that the invasive cancer had even developed at that point. See *Walker v. Melton*, 227 Ga. App. at 151 (1) (acknowledging that it would be unconstitutional to find the statute of limitation in a medical malpractice case began to run before the injury resulting from the negligence even occurred).

Accordingly, a jury issue exists as to when the invasive cancer developed and metastasized, and whether Mrs. Ward had any symptoms of the invasive cancer prior to July 2001, two years before she filed suit. Therefore, the trial court erred in finding as a matter of law that the Wards' claims were barred by the statute of limitation and in granting summary judgment to Dr. Bergen. *Staples v. Bhatti*, 220 Ga. App. at 405-406 (1); see also *Zechmann v. Thigpen*, 210 Ga. App. 726, 728-729 (3) (437 SE2d 475) (1993) (physician failed to diagnose a patient's optic nerve disease, which then developed into glaucoma and resulted in the removal of the patient's eye; statute of limitation did not begin to run until patient first experienced symptoms of glaucoma); cf. *Burt v. James*, 276 Ga. App. 370 (623 SE2d 223) (2005) (patient experienced redness, swelling, and pain at the site of the allegedly negligent back surgery from the time of surgery until he was properly diagnosed and treated; therefore, the *Whitaker* exception did not apply); *Harrison v. Daly*, 268 Ga. App. 280, 284 (601 SE2d 771) (2004) (breast cancer patient's symptoms became worse after the

misdiagnosis, so the *Whitaker* rule did not apply and the claim was barred by the statute of limitation).
*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED JANUARY 19, 2006 —

*Bird & Mabrey, William Q. Bird, John G. Mabrey, Carla R. Johnson, Bondurant, Mixson & Elmore, Michael B. Terry, Frank M. Lowrey IV,* for appellants.
*Love, Willingham, Peters, Gilleland & Monyak, Robert P. Monyak, Stacey A. Carroll, R. Keith Whitesides,* for appellees.